IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Thomas Lee Pelzer, #311633, ) | C/A No. 5:11-30-MBS-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| SCDC, Perry Correctional Institution, Jon ) | |
| Ozmint, Mary Coleman, Robert Ward, ) | |
| Michael McCall, David Tatarsky, Miriam ) | |
| Snyder, Florence Mauney, Captain Tinch, ) | |
| Rhonda Abston and Lt. Harouff, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The plaintiff, Thomas Lee Pelzer ("Plaintiff"), brought this action as a pro se state prisoner,[1] seeking relief pursuant to 42 U.S.C. § 1983. Plaintiff also brought a state tort claim of libel against defendants SCDC and Perry pursuant to 28 U.S.C. § 1367. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Defendants' motion for summary judgment. ECF No. 41. Because Plaintiff is proceeding pro se, the court advised him on August 9, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), of the dismissal and summary judgment procedures and the possible consequences if he failed to respond adequately. ECF No. 42. Plaintiff filed a response in opposition to Defendants' motion with additional attachments. ECF Nos. 44, 45 & 47. Defendants filed a reply on September 19, 2011. ECF No. 54. Having carefully considered the parties' submissions and the applicable law, the undersigned recommends that Defendants' motion be granted.

---

[1] At the time of filing Plaintiff was an inmate at the Perry Correctional Institution ("Perry" or "PCI") of the South Carolina Department of Corrections ("SCDC"). Plaintiff informed the court that he was released from prison on November 1, 2011. ECF No. 56.

I.  Procedural and Factual Background

Plaintiff's Complaint alleges that, while incarcerated in the Special Management Unit ("SMU") of Perry, he suffered a variety of constitutional violations. Plaintiff alleges that prison staff and officials (1) violated his 1st Amendment right to seek redress of grievances, (2) violated his due process and/or procedural due process rights under the 5th and 14th Amendments by failing to investigate a grievance concerning cell cleaning and failing to comply with SCDC policy requiring an investigation, and (3) violated his 14th Amendment right to due process and equal protection because he was subjected to confinement with his "door flap" closed at all times with a sign posted that indicated the flap was closed due to sexual misconduct. *See* Compl., ECF No. 1. Plaintiff also alleges "SCDC and/or PCI committed libel" by placing the sexual misconduct sign on his flap "maliciously and intentionally to damage [his] reputation." ECF No. 1 ¶ 49. Plaintiff seeks monetary damages and injunctive relief.[2]

II.  Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

---

[2] Because Plaintiff has been released from the SCDC, any injunctive relief requested by Plaintiff is now moot. *Incumaa v. Ozmint*, 507 F.3d 281, 286-87 (4th Cir. 2007).

materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III. Discussion

Defendants contend that the court should grant their motion for summary judgment because: (1) Plaintiff's claim regarding the cell door flap and sign should be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"); (2) Plaintiff's claims regarding grievances do not state constitutional violations; (3) the conditions of Plaintiff's confinement do not violate the Eighth Amendment; (4) Plaintiff cannot show a due process violation, (5) Plaintiff fails to state a valid equal protection claim; (6) Plaintiff's Complaint fails to state a cause of action against Defendants; and (7) Defendants SCDC and/or Perry did not commit libel against Plaintiff.

3

A. Exhaustion of Remedies

Defendants assert that, under the PLRA, Plaintiff did not exhaust his administrative remedies as to the cell door flap and sexual misconduct sign issue because he "failed to file a grievance on the sign issue." ECF 41-1 at 3. Plaintiff argues that because prison officials limited him to filing only three grievances per month,[3] he was unable to follow standard grievance procedures and used the only remedy available to him—addressing his complaint to the warden via written requests and writing to the head mental health counselor at Perry. ECF No. 1 ¶¶ 45-46.

A prisoner must exhaust his administrative remedies as required by the PLRA, specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative remedies. *See Booth v. Churner*, 532 U.S. 731 (2001). "[T]hose remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "'using all steps that the agency holds out, and doing so *properly*[.]'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v.*

---

[3] Miriam Snyder (formerly Miriam Cocciolone), the Inmate Grievance Coordinator ("IGC") at Perry, attested that in 2009 Plaintiff filed 66 grievances, and from January 1, 2010 through December 1, 2010, Plaintiff filed 65 grievances. Pursuant to SCDC policy regarding abuse of the inmate grievance system, on February 22, 2010, Plaintiff's grievances were limited to three per month. *See* Snyder Aff. ¶¶ 2-3, ECF No. 41-6.

4

*McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). A plaintiff's failure to exhaust administrative remedies is an affirmative defense that defendants have the burden to plead and prove. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). "However, '[d]efendants may . . . be estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures.'" *Stenhouse v. Hughes*, C/A No. 9:04-23150-HMH-BHH, 2006 WL 752876, at *2 (D.S.C. Mar. 21, 2006) (quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004)).

Plaintiff alleges that officers closed his door flap and posted the sexual misconduct sign on the morning of December 15, 2010. ECF No. 1 ¶ 36. Plaintiff created a handwritten "Request to Staff" form and sent it to Warden McCall on December 16, 2010, asking the sign be removed as he was not guilty of engaging in sexual misconduct. ECF No. 1-1 at 20. Plaintiff submitted two additional "Request to Staff" forms to Warden McCall on December 21 and 22, 2010 (ECF No. 1-1 at 22-23), and one to Mental Health Supervisor Dedric Williams on December 17, 2010 (ECF No. 1-1 at 21). Although stamped "received" by the PCI mailroom, officials did not respond to Plaintiff's requests. In support of their argument that Plaintiff failed to exhaust his administrative remedies, Defendants rely on the affidavit of IGC Snyder. IGC Snyder stated that she received Plaintiff's three allowed grievances for the month of December on or about December 14, 2010.[4] *See* Snyder Aff. ¶ 11, ECF No. 41-6. Defendants state that in two of those grievances Plaintiff raised the same issue dealing with medications. Defendants argue that, had

---

[4] The Defendants' limitation on the number of grievances Plaintiff was allowed to file is not an issue. *See Oliver v. Powell*, 250 F. Supp.2d 593, 603 (E.D. Va. 2002) (finding that allegations regarding the limitation on the number of grievances allowed presented no constitutional claim as plaintiff was not entitled to any grievance procedure).

Plaintiff raised the medication issue in one grievance, instead of two, he would have been able to file a grievance on the door flap issue. However, when IGC Snyder received the grievances on December 14, 2010, instead of informing Plaintiff that the two similar grievances would be considered together, as she had done with other grievances filed by Plaintiff,[5] she considered each grievance individually and issued a response on February 7, 2011. *See* Snyder Aff. Ex. C, ECF No. 41-9.

The undersigned finds that Defendants appear to have inhibited Plaintiff's ability to use the grievance system by not combining the two similar grievances when received on December 14, 2010, and ignoring Plaintiff's request on December 16, 2010. *See Stenhouse*, 2006 WL 752876 at *2 ("Additionally, exhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies."). Because it appears that prison officials thwarted Plaintiff's efforts to exhaust his administrative remedies with regard to the door flap and sexual misconduct sign, Defendants should not be allowed to raise failure to exhaust as an affirmative defense to that claim.

B. Alleged First Amendment Violation

Defendants seek summary judgment regarding Plaintiff's allegation that prison officials violated his constitutional right to seek redress of his grievances. Plaintiff filed six Step One grievances concerning lack of access to law books. Prison officials responded to the first grievance (PCI-0118-10), and informed Plaintiff the remaining grievances were addressed by the response to grievance PCI-0118-10. ECF No. 1-1 at 1-8. Plaintiff asserts that officials did not address his grievances, and he was unable to appeal the grievances due to time constraints. ECF No. 1 ¶¶ 18-19. Plaintiff also complains that officials improperly refused to process a grievance

---

[5] Snyder Aff. ¶¶ 4-5, ECF No. 41-6.

he filed in December 2009 concerning his placement on a ward with inmates with mental health problems (ECF No. 1 ¶ 5), and that officials failed to comply with SCDC policy requiring investigation of his grievance concerning his request for cell cleaning (ECF No. 1 ¶ 29). Plaintiff's claims concerning the grievance system or the processing of his grievances are not actionable as constitutional violations. The Fourth Circuit has held that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Even if Defendants violated SCDC grievance procedures, such actions do not state an actionable § 1983 claim. *Brown v. Dodson*, 863 F. Supp. 284 (W.D. Va. 1994). Accordingly, Plaintiff's claim that Defendants violated his First Amendment rights must fail.

    C. Alleged Due Process Violations

Plaintiff complains that inmates housed in the Special Management Unit ("SMU") of Perry were allowed to clean their cells only once a week. ECF No. 1 ¶ 25. Plaintiff filed a Step 1 grievance stating that Perry's SMU inmates were supposed to be allowed to clean their cells three times per week like the SMU inmates in other institutions. ECF No. 1-1 at 16. Prison administration denied his grievance (ECF No. 1-1 at 17), and Plaintiff filed a Step 2 grievance appealing the decision (ECF No. 1-1 at 18). Plaintiff's Complaint asserts that Defendant Snyder violated his due process and procedural due process rights by failing to investigate his grievance and failing to comply with SCDC policy in taking action on his grievance.[6] ECF No. 1 ¶ 29. Even if his claim is true, violations of policies and procedures do not rise to the level of a

---

[6] Plaintiff does not specifically allege an Eighth Amendment violation in his Complaint, but to the extent he does, Defendants seek summary judgment because Plaintiff does not meet the objective or subjective requirements to establish such a violation. *Johnson v. Quinones*, 145 F.3d 164 (4th Cir. 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The undersigned agrees, and finds that Plaintiff cannot succeed on an Eighth Amendment claim regarding conditions of confinement.

constitutional violation. *Keeler v. Pea*, 782 F. Supp. 42 (D.S.C. 1992) (finding that § 1983 "does not provide any relief against prison rules violations assuming, *arguendo*, that such a violation occurred"). In his response to Defendants' motion for summary judgment, Plaintiff clarifies that his due process claim is not entitlement to a grievance procedure, because he did file a grievance pursuant to the Eighth Amendment. Plaintiff argues instead that he "should have a right to redress such conditions that violates the 8th Amendment, and receive an investigation as outlined in the policy to establish his claim in order for it to be remedied." ECF No. 44-1 at 14. The Fourth Circuit recognized in *U.S. v. Stotts*, that "prison inmates retain a number of constitutional rights, including the right to petition the government for redress of grievances, the right of access to the courts, the protection of due process, and freedom of expression. 925 F.2d 83, 86 (1991) (internal citations omitted). The court further found as follows:

> Recognition of some measure of constitutional protection, however, "in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed." Maintaining safety and internal security are "core functions of prison administration," that can justify "withdrawal or limitation of many privileges and rights. . . ." Other legitimate penological objectives that warrant limits on the exercise of inmate rights include rehabilitation of prisoners and deterrence of crime, as well as the savings of scarce prison resources.

*Id.* IGC Snyder attested that she "spoke with the SMU lieutenants and confirmed compliance with SCDC policy [regarding cleaning of inmate cells]" and did not find it necessary to investigate further. Snyder Aff. ¶ 9, ECF No. 41-6. Plaintiff's claim that Snyder failed to follow SCDC policies, even if true, fails to set forth a constitutional claim. *See Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("[T]o hold that a state violates the Due Process Clause every time it violates a state-created rule regulating the deprivation of a property interest would contravene the well recognized need for flexibility in the application of due process doctrine."); *Scott v. Hamidullah*, C/A No. 3:05-3027-CMC-JRM, 2007 WL 904803, at

8

*5 n.6 (D.S.C. Mar. 21, 2007) ("To the extent Plaintiff alleges that Defendants did not follow their own policies, his claim fails as a failure of prison officials to follow their own policies or procedures, standing alone, do not amount to constitutional violations."). Defendants did not violate Plaintiff's due process rights regarding investigation of cell-cleaning policies.

Plaintiff also asserts that the placement of the sexual misconduct sign on his cell door and the closing of his cell door flap "subject[ing] him to dungeon like conditions for almost a month" (ECF No. 44-1 at 9) were violations of his due process rights.[7] Plaintiff alleges that Defendants Mauney, McCall, Tinch, Abston, and Harouff violated his due process rights "by subjecting Plaintiff to conditions different from those ordinarily experienced by large numbers of inmates serving their sentences in the customary fashion on SMU, defendants subjected Plaintiff to an atypical and significant hardship" (ECF No. 1 ¶ 47(b)); and "by punishing Plaintiff with sanctions not prescribed by SCDC policies and procedures" (ECF No. 1 ¶ 47(c)).

In *Sandin v. Conner*, the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995). Restrictive and even harsh conditions are part of the penalty associated with incarceration. "[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free from discomfort." *James v. Davis*, C/A No. 9:05-2733-DCN-GCK, 2006 WL 2171082, at *4 (D.S.C. July 31, 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Plaintiff cannot show an atypical or significant hardship. *See Sandin*,

---

[7] SCDC Captain Rhonda Abston attested that: "The flaps were closed on all cells for less than two weeks. Since that time, flaps are closed on individual cells due to inmate behavior, a planned use of force on another inmate and when a nurse enters the dorm due to a continuing problem with masturbation." Abston Supp. Aff. ¶ 4, ECF No. 54-2.

9

515 U.S. at 486 (finding that 30 days plaintiff spent in segregated confinement "did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction"). As noted in his Complaint, albeit "smeared, dirty, and dusty," Plaintiff's cell had a window to the outside (ECF No. 1 ¶ 33), and lights remained on in his cell until about 11:00 p.m. every night (ECF No. 1 ¶ 34). Furthermore, prison officials ordered the cell door flaps opened after less than one month. *See* Abston Supp. Aff. ¶ 4, ECF No. 54-2.

Defendants argue that the placement of the sign and the closing of the door flap were not sanctions under a SCDC disciplinary policy, but were done to preserve and improve security within the SMU. Captain Abston attested as follows:

> That in December, 2010 there was a problem in SMU with inmates masturbating in the presence of females coming to SMU. As a result, I ordered officers to close the flaps on cells where this was an issue. To advise officers on all shifts why the flaps were shut, I ordered signs placed which indicated "sexual misconduct."

Abston Aff. ¶ 2, ECF No. 41-2. Abston stated that "the signs were not up more than 1-2 weeks at most." *Id.* ¶ 5. "Prison officials have broad administrative and discretionary authority over the institutions they manage and . . . lawfully incarcerated persons retain only a narrow range of protected liberty interests." *James*, 2006 WL 2171082 at * 4 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)). "Admittedly, prisoners do not shed all constitutional rights at the prison gate, but '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Sandin*, 515 U.S. at 485 (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977)). As stated by the Fourth Circuit, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Baker v. Lyles*, 904 F.2d 925, 930-31 (4th Cir. 1990). As stated above, violations of policies and procedures do not rise to level of a constitutional

violation, and Plaintiff's claims regarding the cell door flap and sign are not due process violations. Defendants are entitled to summary judgment on this claim.

D. Equal Protection Claim

Plaintiff claims that Defendants violated his equal protection rights in that similarly situated inmates are treated differently because their cells do not have a window flap that can be closed. ECF No. 1 ¶ 47(a). Defendants argue that Plaintiff cannot show the treatment complained of was caused by intentional discrimination. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained 'if there is a rational relationship between the disparity of treatment and some legitimate government purpose.'" *Veney v. Wyche*, 293 F.3d 726, 731 (4th Cir. 2002) (quoting *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)). In *Veney*, the plaintiff alleged prison officials denied his requests to move from a single-occupancy cell into a double-occupancy cell because he was a homosexual male. Veney alleged he was treated differently because of his gender and sexual preference. The Fourth Circuit held that Veney's case did not involve a fundamental right, and he did not allege he was a member of a suspect class. *Id*. As in *Veney*, Plaintiff's claim does not involve a fundamental right, and he does not allege that he is a member of a suspect class.

> When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. In a

prison context, therefore, we must determine whether the disparate treatment is "reasonably related to [any] legitimate penological interests."

*Veney*, 293 F.3d at 732 (internal citations omitted). Here, Warden McCall states that there is a legitimate penological objective for closing an inmate's door flap. Officers have discretion to close flaps to prevent an inmate from masturbating or exposing himself in the presence of a female employee or officer. McCall Aff. ¶ 12, ECF No. 41-3. Because Plaintiff has not alleged any facts to overcome the presumption of reasonableness regarding the closing of the cell door flap, his equal protection claim must fail.

    E. Qualified Immunity

Defendants assert they are entitled to summary judgment under the defense of qualified immunity. Plaintiff names some Defendants in their "individual capacity" and several other Defendants in their "official capacity." ECF No. 1 ¶¶ 19, 20, 31, 48. Pursuant to *Harlow v. Fitzgerald*, defendants sued in their individual capacities are entitled to qualified immunity if their conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known. 457 U.S. 800, 818 (1982). As discussed above, Plaintiff failed to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities. Furthermore, Defendants may not be sued under §1983 for damages in their official capacities as such an action against the official's office is the same as suit against the State. *Bright v. McClure*, 865 F.2d 623, 626 (4th Cir. 1989). The State has immunity from suit pursuant to the Eleventh Amendment of the Constitution. Additionally, defendants sued in their official capacity are not "persons" within the meaning of §1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, Plaintiff's claims against Defendants in their official capacity also should be dismissed.

IV.  Conclusion and Recommendation

Based on the foregoing, the undersigned recommends that Defendants' motion (ECF No. 41) be granted and recommends dismissal of Plaintiff's claims brought under 42 U.S.C. § 1983. Having found Defendants are entitled to summary judgment regarding Plaintiff's constitutional claims, the undersigned recommends that the court decline to exercise supplemental jurisdiction over Plaintiff's state law claim for libel. *See* 28 U.S.C. § 1367(c)(3).

IT IS SO RECOMMENDED.

February 15, 2012  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**